UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


ALAYNE AYERS,

      **Plaintiff,**

v.                                    Case No.  8:05-cv-1946-T-TBM

JO ANNE B. BARNHART,
Commissioner of the United States
Social Security Administration,

      **Defendant.**

                                            /


## O R D E R

The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits.  For the reasons set out herein, the decision is affirmed.


I.

Plaintiff was 52 years of age at the time of her administrative hearing.  She stands 5', 1" tall and weighed 160 pounds.  Plaintiff has an eleventh grade education and training as a dialysis technician and cashier.  Her past relevant work was as a dialysis technician, pizza delivery employee, convenience store manager, and park attendant.  Plaintiff applied for disability benefits in February 2002, alleging disability as of January 15, 2002, by reason of seizures, blackouts, memory loss, and high blood pressure.  The Plaintiff's application was denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ").  The Plaintiff was represented at the hearing by counsel and testified in her own behalf.  Plaintiff's husband also testified, as did a vocational expert.  In essence, Plaintiff testified that she was no longer able to work or seek work after she suffered her first seizure while driving through Georgia in January 2002.  Plaintiff indicated that the seizures have continued and she sometimes has small ones every day.  By her account, the seizures cause her to blank out for five or six minutes and they come on unexpectedly.  Since her hospitalization, Plaintiff has continued to treat the condition with medication.  The medication helps with the severity of the seizures but not with the frequency of the seizures.  It also causes side effects, such as making her "eyes blurry"and affecting her ability to read.  As a consequence of her seizures, she has lost consciousness and fallen on occasion.  At other times, she experiences staring seizures, during which she stares but is unaware of what's going on around her, and she has no memory of the event.  Sometimes she deals with or ignores these events, but at other times, she grows frustrated and wants to just sit and cry.  Additionally, Plaintiff feels tired all the time and has difficulty doing things on a sustained basis.  Her memory has been affected as has her ability to concentrate.

Plaintiff is hepatitis C positive; Plaintiff believes that she contracted it when she worked in a dialysis unit and was stuck with a needle.  Plaintiff also received a blood transfusion sometime in the 1960s after being hit by a car.  At the time of the hearing, Plaintiff had been receiving treatments for her hepatitis C for a few months.  According to Plaintiff, she had noticed fatigue prior to her diagnosis, and the fatigue has grown worse.  Plaintiff testified

that she feels the fatigue in her limbs, and it is difficult to walk very far or even wash her hair. She also complained of constant headaches. Plaintiff described her condition on the medication as "the most horrible flu on earth."

Plaintiff also testified that she experiences a dull ache in her back most of the time and experiences a sharp pain if she bends the wrong way or twists or lifts something too heavy. She takes Naproxen for her back pain. Plaintiff indicated that she can lift and carry a gallon of milk so long as she does not twist while picking it up. She believed that she could lift that weight for a while but not all day because of her back. Her back affects her ability to sit for long periods of time, and she estimates that she can sit for less than half an hour before she must shift positions. Plaintiff further estimated that she can walk for about a half a block without resting and stand for about half an hour.

Plaintiff opined that she could not sit and work for an eight-hour day because she is unable to concentrate. She loses track of the day and parts of the day. Her problems with her memory manifests itself at home by her burning food. Her husband only leaves her alone for very short periods, about an hour and a half at the most; he will forego going places or take her with him.[1]  See Plaintiff's testimony (R. 399-422).

Plaintiff's husband, Kenneth L. Ayers, also testified in Plaintiff's behalf. He first learned of Plaintiff's seizure problem in around January 2002, when she was on her way to

---

[1]On questioning from the ALJ, Plaintiff also indicated that in February 2002, after drinking and fighting with her husband, she checked herself into a alcohol and detoxification program for one day. She testified that she no longer drinks at all because she "just didn't like it" when she was also taking her seizure medication. She testified that she never uses illegal drugs, but she smokes about two packs of cigarettes per week.

West Virginia to join him.  Mr. Ayers described Plaintiff's seizures as occurring periodically, from one to three times a week or sometimes four or five times a week.  Sometimes she would go into convulsions and fall onto the floor and other times she would sit and stare at the wall and shake.  The seizures would last from two seconds to several minutes.  He testified that he is concerned about leaving her alone because she could fall and hurt herself or go outside and not be aware of what she is doing when she is having a seizure.  He does not allow Plaintiff to drive anywhere, and he keeps an eye on her actions.  He also testified that Plaintiff experiences memory problems all the time and forgets things like her doctors' appointments, taking her medication, washing the laundry, leaving food on the stove, expecting visitors, and following a movie.  Mr. Ayers also testified that Plaintiff becomes tired easily, in part because of her medicine, and she sits around and sleeps a lot.  See Mr. Ayers' testimony (R. 423-29).

The ALJ also took the testimony of Allen Freeman, a vocational expert (hereinafter "VE"), who testified first to Plaintiff's past work and the transferable skills she attained such as cash handling, baking, and driving.  On an assumption of an individual approaching advanced age with a limited education and Plaintiff's vocational background and transferable skills, a history of partial seizures, hepatitis C, and some hypertension, and the residual functional capacity for a limited range light work, namely, the ability to lift twenty pound occasionally and ten pounds frequently; sit, stand, and walk for six hours out of an eight-hour workday; perform occasional postural activities with no significant manipulative, communicative, or environmental limitations except for working at unprotected heights or with hazardous machinery or climbing ladders or jobs that require driving vehicles and highly

aerobic activity such as constant or frequent climbing or walking; and maintain attention, concentration, and pace, the VE opined that Plaintiff could perform her past jobs of dialysis technician and grocery clerk.  The VE, however, qualified his answer on follow-up and indicated that if Plaintiff had hepatitis C, she would unable to work as a dialysis technician, and in somewhat vague terms, he appeared to indicate she could not do the convenience store clerk/cashier job either if she had hepatitis C.  In the alternative, if Plaintiff was unable to perform her past relevant work, the VE opined that Plaintiff could perform work as a small products assembler, mail clerk, or hand packager.  Upon the additional limitation that Plaintiff would have some difficulty with her attention and concentration to the point that she would not be able to perform tasks in a timely manner, the VE opined that no work would be suitable for the Plaintiff.  See VE's testimony (R. 430-38)

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are not set out herein in detail.  Significant to the decision was Plaintiff's date last insured for disability benefits, June 30, 2002.

By his decision of April 25, 2005, the ALJ determined that while Plaintiff has severe impairments related to her history of partial seizures, hepatitis C, and hypertension, she nonetheless had the residual functional capacity to perform a significant range of light work. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to her in the local and national economy.  Upon this conclusion, the Plaintiff

was determined to be not disabled.  (R. 13-23).  The Appeals Council denied Plaintiff's

request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits, a claimant must be

unable "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which . . . has lasted or can be expected to last for a continuous

period of not less than 12 months. . . ."  42 U.S.C. § 423(d)(1)(A).  A "physical or mental

impairment," under the terms of the Act, is one that "results from anatomical, physiological,

or psychological abnormalities which are demonstrable by medically acceptable clinical and

laboratory diagnostic techniques."  Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld

if it is supported by substantial evidence and comports with applicable legal standards.  See id.

at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971)

(quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d

1397, 1400 (11th Cir. 1996).  The Commissioner must apply the correct law and demonstrate

that she has done so.  While the court reviews the Commissioner's decision with deference to

the factual findings, no such deference is given to the legal conclusions.  Keeton v. Dep't of

Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan,

936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises five claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The Administrative Law Judge erred in failing to afford due weight to the treating neurologist's opinions regarding claimant's seizure impairment and resulting limitations;

(2) The Administrative Law Judge erred in failing to consider the combined effect of all Mrs. Ayers' impairments;

(3) The Administrative Law Judge erred in disregarding uncontradicted evidence of claimant's impaired concentration and memory and severe fatigue without stating any grounds therefore;

(4) The Administrative Law Judge erred in finding that Claimant could return to her past relevant work as a convenience store clerk when the VE testified to the contrary; and

(5) The Administrative Law Judge erred in failing to post a hypothetical to the Vocational Expert that included all of Mrs. Ayers' impairments.

By her first claim, Plaintiff urges that the ALJ improperly discounted the opinions of treating neurologist, Larry W. Horton, M.D.  In particular, Plaintiff cites to Dr. Horton's August 2004 Residual Functional Capacity questionnaire.  While acknowledging that the ALJ addressed the assessment, Plaintiff complains that the ALJ failed to afford it the appropriate weight and otherwise failed to explain why the opinions of this doctor were not credible.

When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary.  Broughton v. Heckler, 776 F.2d 960, 961 (11th Cir. 1985); see also 20 C.F.R. § 404.1527(d)(2).  Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error.  In this circuit, where the Commissioner has ignored or failed properly to refute the treating physician's testimony, such testimony, as a matter of law, must be accepted as true.  MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).  Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments.  Lewis v. Callahan, 125 F.3d

1436, 1440 (11th Cir. 1997).  Good cause for rejecting a treating source's opinion may be found where such opinion is not supported by the evidence or where the evidence supports a contrary finding.  Id.; Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987).

Upon my own consideration of the medical record and upon a fair reading of the decision, I conclude that the ALJ adequately discounted Dr. Horton's disability opinions insofar as the opinions predated June 30, 2002.  While the decision does not expressly mention the applicable standard, the ALJ specifically noted that:

> Although Dr. Horton stated that the claimant's disability began in January 2001, he did not start treating the claimant until February 2002.  His office records, up to June 30, 2002, reflect fairly stable condition with treatment and medications, no indication of generalized or partial seizure activity and do not support a finding of disability prior to June 2002.  She was assessed with stable hypertension, controlled seizures and her hepatitis C was not active prior to June 30, 2002.

See (R. 19).  The clear implication of this language is that the ALJ discounted Dr. Horton's testimony on disability to the extent that it reflected on a period prior to the Plaintiff's date last insured.  Additionally, the conclusions are supported by a fair reading of Dr. Horton's own records on or before, and even after, Plaintiff's date last insured.  Thus, on the initial visit, Plaintiff reported experiencing staring-like spells while in high school and the seizure incident in Savannah, Georgia, in January 2002.  (R. 247-48).  Plaintiff was ordered to continue Dilantin therapy.  Id. at 249.  In a follow up visit on April 4, 2002, Plaintiff reported that she had been relatively stable with no generalized seizure activity or partial seizure activity.  Id. at 245.  She was continued on her Dilantin therapy.  Id.  On May 16, 2002, Plaintiff reported a "shaking" episode where she awakened and felt "weak."  Id. at 243.  Due

to a low Dilantin level and the potential for lack of compliance, she was directed to increase

her Dilantin. Id. In an August 2002 follow-up, Plaintiff complained of occasional dizziness

and staring-like spells despite the Dilantin. Id. at 242. On September 16, 2002, the doctor

reported that while Plaintiff complained of arthralgic discomfort, no seizures had been

reported. Id. at 241. It appears that Plaintiff did not visit with Dr. Horton again until February

2003 when she did report an experience of slight alteration in level of alertness without other

seizure activity noted. See id. at 239-40. A report from July 2003 reflects no seizure activity.

Id. at 238. Throughout this period of treatment, neurologic findings were consistently normal.

Thus, while the matter clearly could have been handled better by the ALJ, it is apparent that

he reviewed the medical records and opinions of this treating doctor and rejected them to the

extent that Plaintiff suggests they indicate a disability on or before Plaintiff's date last insured.

Given the lack of clinical findings in the medical report of this doctor, the ALJ's conclusion is

supported by substantial evidence. Nowhere in the actual medical notes is there reference to

postictal confusion, exhaustion, irritability, muscle strain, or fatigue as reflected in the later

assessment. In fact, there is no evidence that Plaintiff complains of such conditions either.

So, while the matter could have been handled with greater clarity, my reading of the decision

and the medical records supports the ALJ's rejection of the disability opinion insofar as it

relates to the period on or before June 30, 2002.

By her second claim, Plaintiff urges that the ALJ failed to consider her back

impairment, fatigue, blurred vision, lost memory, and impaired concentration, as well as the

combined effect of her impairments. Plaintiff further urges that her degenerative disc disease

was a severe impairment which the ALJ overlooked.

10

It is well-established that the Act and pertinent case law require the ALJ to consider each impairment, as well as the combined effect of all a claimant's impairments. 42 U.S.C. § 423(d)(2)(B); Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986). Thus, at step two of the five-step evaluation process prescribed by the regulations, the ALJ is called upon to determine whether a claimant's impairments are severe. 20 C.F.R. § 404.1520(c). Under these regulations, if the claimant does not have an impairment or combination of impairments which significantly limits her ability to do basic work activities, then she is not disabled. Id. In application, this inquiry is a "threshold" inquiry. It allows only claims based on the slightest abnormality to be rejected. Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). As indicated above, the ALJ must also consider at this step the combined effect of all of the claimant's alleged impairments even though none of the impairments, when considered individually, is severe or disabling. See, e.g., Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984); 20 C.F.R. § 404.1523. In such instances, the ALJ must make specific and well-articulated findings as to the effect of the combination of impairments and whether the combined impairments cause the claimant to be disabled. See Bowen, 748 F.2d at 635; Walker v. Bowen, 826 F.2d 996, 1001 (11th Cir. 1987).

At the outset, it is worth noting that Plaintiff never alleged that she was disabled by reason of a back condition. Nonetheless, in addressing the medical evidence, the ALJ noted that x-rays taking during treatment at the hospital in Savannah, Georgia, revealed significant degenerative disease at C5-6 with spondylosis and mild degenerative disc disease at C4-5. See (R. 15-16). Further, the ALJ acknowledged Dr. Horton's notation in February 2002 of evidence of cervical strain in the paraspinal muscles but no radicular manifestation. Id. at 16.

11

Subsequently, the ALJ noted that during Plaintiff's August 2004 follow-up with Dr. Horton, she complained only of headaches and occasional staring spells, but no other medical problems.  Id. at 17.  In light of the ALJ's obvious consideration of the disc condition, the decision must be read to imply the conclusion that the condition was not severe as such is defined by the regulation.  Other than Plaintiff's subjective complaint at the hearing that such condition causes her pain and backache, there is no other record of the condition suggesting any form of functional limitation.  On this review, Plaintiff makes no demonstration that the degenerative condition in her neck is severe or otherwise imposes functional limitations of any sort.  Plaintiff's testimony that the condition would effect her ability to lift or carry a gallon of milk frequently during an eight-hour day simply is unsupported by the medical evidence as determined by the ALJ.

As for the alleged failure of the ALJ to consider the effects of her fatigue, blurred vision, and memory and concentration deficits, and the argument is without merit insofar as Plaintiff would claim that she suffered such impairment or limitations on or before her date last insured.  As reflected in the decision, the ALJ in fact noted her complaints of forgetfulness, fatigue, blurred vision, and poor concentration after seizures.  See (R. 15).  However, as reflected in the ALJ's review of the medical evidence, such impairments or limitations were not documented by the medical evidence on or before the date last insured.  As noted by the ALJ, none of Dr. Horton's notes reflect on these alleged impairments or limitations on or before the date last insured, and in the case of her diagnosis of hepatitis C, Dr. Ghaneker noted in his reports that at the time he first saw Plaintiff in September 2002, a date after her date last insured, her condition was not symptomatic (R. 291).  Upon my own

independent review of the medical record, to the extent that Plaintiff would claim these conditions or limitations are severe as such is defined by the regulations, the argument is without merit.[2]  Further, the suggestion that they were not considered by the ALJ is simply incorrect as revealed by a fair reading of the decision.

Finally, as for the ALJ's consideration of the combined effect of Plaintiff's impairments, the decision reflects that the ALJ recognized his obligation to do so.  For example, the ALJ specifically recognized that Plaintiff "has a severe combination of impairments, . . ." (R. 14).  The ALJ then found that the medical record did not establish that Plaintiff's impairments, "whether considered individually or in combination," met or equaled the criteria of a listed impairment.  Id.  The Eleventh Circuit has held repeatedly that findings such as these suffice in evidencing consideration of the combined effects of a claimant's impairments.  See Wilson v. Barnhart, 284 F.3d 1219, 1224-25 (11th Cir. 2002); Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1533 (11th Cir. 1991); Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986).

By her third claim, Plaintiff urges that the ALJ erred by failing to make credibility findings with regards to her claimed memory and concentration problems, as well as her severe fatigue.[3]  Where an ALJ decides not to credit a claimant's testimony about [pain], the

---

[2]The medical record does not support Plaintiff's claim that, at anytime prior to her date last insured, she was experiencing seizure activity two to three times a week and small seizures every day, leaving her forgetful and fatigued.  Additionally, it is worthy of note that Plaintiff reported staring episodes dating back to high school.  (R. 248).  This reflected in the record, Plaintiff appears to have worked for a number of years at a number of jobs with this condition.

[3]Plaintiff does not challenge the ALJ's application of the pain standard itself.

ALJ must articulate specific and adequate reasons for doing so or the record must be obvious as to the credibility finding.  Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995); Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).  Here, the ALJ adequately recounted the testimony given by both Plaintiff and her husband.  See (R. 15).  Later in the decision, the ALJ explained why the limitations alleged by Plaintiff were not credible to the extent alleged.  See id. at 19.  Contrary to the Plaintiff's urging, the ALJ discounted her fatigue on the basis that her hepatitis C was asymptomatic prior to her date last insured, and he sufficiently relied on Dr. Horton's medical records in discounting her allegations of disabling impaired concentration and memory problems during the same period.  See id.  The ALJ's reasoning, while it could have been better articulated, is rational and supported by the record.

By her fourth claim, Plaintiff appears correct that the ALJ inappropriately concluded that she could return to her past relevant work as a convenience store clerk.  While the record is not entirely clear, it appears that the VE rejected this former work if Plaintiff suffered from hepatitis C.  See (R. 436-37).  The ALJ's question had assumed a history of hepatitis C, but no symptoms.  See id.  While it is difficult to determine if the VE was wholly discounting such employment opportunity, the error is simply harmless in light of the VE's additional testimony identifying other job available to the Plaintiff in the local and national economy (R. 437-38).  See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error rule to an ALJ's misstatement of evidence in a Social Security case); Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988) (stating that the court will not vacate a judgment unless

the substantial rights of a party have been affected); Fed. R. Civ. P. 61.  Here, Plaintiff makes

no argument that this testimony was inappropriate or that the ALJ was prevented from relying

upon it in reaching an alternative conclusion.  Accordingly Plaintiff is not entitled relief on

this claim.

Finally, Plaintiff argues that the ALJ's hypothetical to the VE was incomplete

because it too failed to consider fatigue, blurred vision, loss of awareness and confusion, and

chronic back pain.  The Plaintiff is correct that case law in this circuit requires that the ALJ

employ hypothetical questions which are accurate and supportable on the record and which

include all limitations or restrictions of the particular claimant.  Pendley v. Heckler, 767 F.2d

1561 (11th Cir. 1985).  Where the hypothetical employed with the vocational expert does not

fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the

expert testimony, is unsupported by substantial evidence.  Id. at 1562 (quoting Brenem v.

Harris, 621 F.2d 688, 690 (5th Cir. 1980)).  However, as noted above, because the limitations

or impairments complained of above were not found to exist on or before the Plaintiff's date

last insured, the ALJ was not required to include such limitations in his hypothetical question.

See Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001) (providing that an ALJ is not

required to include in a hypothetical question those limitations he concludes are not credible).

Rather, as the decision reflects, the ALJ credited Plaintiff with those limitations imposed by

Dr. Horton on or before her date last insured.  Thus, while Dr. Horton instructed Plaintiff not

to drive, climb ladders, swim alone, bathe in a bathtub unmonitored, or perform other

activities which could lead to personal injury, the ALJ credited Plaintiff with limitations for

working around unprotected heights, hazardous machinery, driving, and prohibited her from

climbing ladders.  These limitations are those supported by the medical record on or before

the date Plaintiff was last insured.  For these reasons, Plaintiff is not entitled to relief under this claim.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence.  The decision is affirmed.  Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 30th day of January 2007.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record

16